**SALVAGE PROCESS CORPORATION et al. v. ACME TANK CLEANING PROC-ESS CORPORATION.**

No. 121.

Circuit Court of Appeals, Second Circuit.

Jan. 10, 1938.

W. Hastings Swenarton, of New York City, for appellant.

Samuel E. Darby, Jr., and Darby & Darby, all of New York City, for appellees.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a decree for the plaintiff in a suit to enjoin the infringement of Claim 1 of Patent, No. 1,405,173, issued to Hervey J. Wheeler. The case has been already before us on appeal from an interlocutory injunction against infringing the same· claim, which we reversed. Salvage Process Co. v. Acme Tank Cleaning Process Corp., 2 Cir., 86 F.2d 725. We refer to the statement of facts in that opinion, and proceed at once to the issue of infringement, for the defendant now, as before, acknowledges the validity of the claim. Our first decision assumed that the sludge might be emulsified at the entrance of the tube, 10, or in some part of its length, and we shall assume it now as well. Upon the trial the judge so found after actual inspection, and the defendant does not appear to dispute his conclusion. But this does not cover the first element of the claim; "a high vacuum" in the "receptacle." The specification defines both these terms; the "receptacles" are the "cylindrical exhaust tanks of large capacity" (p. 1, lines 75-76) marked "FF," into which the emulsion is directly ejected, and in which the prescribed vacuum is maintained through connections with the air pump, D. It is true that the specifications do not expressly so describe these tanks, but there is no other possible meaning for the word in the claim. The "high vacuum" must be twenty-five inches or more (p. 2, lines 7-8), and while we might not hold the patentee

to the exact lower limit, there can be no doubt that the claim does not tolerate a vacuum as low as ten inches or twelve. Turning now to the defendant's apparatus there can be no vacuum in the chamber, 21, lower than twelve inches, because the relief valve, 26, will at that point begin to admit air. The defendant asserts that this positively proves that there is no "high vacuum" in the "receptacle" within the meaning of the claim. The plaintiff answers this reasoning as follows. The internal temperature of the chamber, 21, is estimated to be between 160 and 180 degrees Fahrenheit, and 161 degrees presuppose a steam pressure in the chamber of ten inches. Since the pressure of both steam and air within the chamber cannot become less than eighteen inches—equivalent to a vacuum of twelve inches—and since by virtue of Dalton's Law the combined pressure of the mixed steam and air is equal to the sum of the pressures of both, the air pressure cannot be greater than eight inches—equivalent to a vacuum of twenty-two inches. Thus the defendant's "evactor pump" must reduce the air to a vacuum of substantially the proportions which the claim demands.

There might be force in this reasoning if the defendant's "evactor pump" could be regarded as the "receptacle," for the pressure in the pump may conceivably be as low as eight inches. But it cannot be so regarded; literally indeed, the defendant's only "receptacle" is the "slop tank," 6, where the pressure is atmospheric. It would perhaps be unfair to construe the claim so strictly, but the nearest equivalent to Wheeler's "exhaust tanks" is the chamber, 21, because it is there that the emulsion loses its gases—air and steam—and drops as sludge to be ejected by means of the manifold pump, 32. At any rate unless that be the defendant's "receptacle" there is none, and the claim does not cover its apparatus at all. On the other hand, if the chamber is the "receptacle" it contains no "high vacuum" for that means the effective pull or suction within it, and it does not matter whether that be the result of one gas or of two. Indeed, if the number of gases did matter, the defendant would not infringe, for it uses two gases instead of the one disclosed. It is only by the negative pressure in that chamber that it can infringe, and as it does not infringe there, it does not infringe at all.

This seems to us certainly the correct result, for the defendant could not raise its sludge by any such vacuum as it creates in the chamber, 21, unsupplemented by its steam "booster," which drives forward the sludge and breaks it up into emulsified fragments. It may indeed be true that the defendant owes the success of its apparatus to Wheeler's germinal idea, but ideas are not patentable; Wheeler got, and could have got, a monopoly only upon some embodiment of that idea. Even so, perhaps he might have got a claim broad enough to cover a vacuum supplemented by a positive "boost"; but he did not, to do so he would have had to lower the vacuum much below the limit which he accepted. Like many another inventor he may have lost the full measure of his discovery, but the place to remedy that was the Patent Office, not the courts, which must enforce the bargain as it was made.

Decree reversed; bill dismissed.